IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CANDRICE BOYD,<br><br>    Plaintiff,<br><br>v.<br><br>PROTESTANT MEMORIAL MEDICAL CENTER, INC., d/b/a MEMORIAL HOSPITAL BELLEVILLE,<br><br>    Defendant. | Case No. 3:23-CV-3961-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Protestant Memorial Medical Center, Inc., d/b/a Memorial Hospital Belleville ("Memorial Hospital"). (Doc. 33). Pro se Plaintiff Candrice Boyd filed a response in opposition (Doc. 46), and Memorial Hospital filed a reply brief (Doc. 48).[1] For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

The following facts are derived from the Amended Complaint (Doc. 13) and taken as true for the purpose of the motion to dismiss.

From August 2018 to December 2022, Boyd was employed as an echocardiographer at Memorial Hospital. (Doc. 13 at ¶ 2). Boyd, an African American

---

[1] Boyd also filed a Sur-reply (Doc. 49) and a Motion for Leave to File a Supplemental Response to Sur-reply (Doc. 52). Defendant has moved to strike these documents. (Docs. 50, 53). The Motion to Strike is **GRANTED**, and these documents are **STRICKEN**. The Court's Local Rules prohibit the filing of sur-reply briefs. SDIL-LR 7.1(a)(4) ("Under no circumstances will sur-reply briefs be accepted.").

woman, claims that her supervisor, Shelia Revoir-Payne, used offensive racial slurs with Boyd, asked her offensive questions about her race, and tolerated racial slurs made to Boyd by other employees. (*Id.*). Specifically, Revoir-Payne made comments about Boyd's hair texture and hairstyles. (*Id.* at ¶ 14). When the comments and questions persisted, Boyd indicated she was uncomfortable and told Revoir-Payne she would not answer the questions. (*Id.*). Manager Tamela Wielgus observed the harassing statements and did not intervene, initiate corrective action, or report the events. (*Id.* at ¶ 15).

In May 2019, Revoir-Payne referred to Boyd and other African American people using the "N word." (*Id.* at ¶ 17). Revoir-Payne also told Boyd, "Your hair is not as kinky as other blacks," "You people can do a lot with your hair," and asked her, "How are you able to keep your hair straightened?" (*Id.* at ¶ 19). Boyd told Revoir-Payne that these statements were racist and expressed concern that Revoir-Payne was creating a hostile work environment. (*Id.* at ¶¶ 20-21).

Revoir-Payne also refused to follow the guidelines of the American Registry for Diagnostic Medical Sonography ("ARDMS"), the agency responsible for licensing Boyd, by prematurely scheduling patients for transport during Boyd's shift and not allotting the required amount of scan time. (*Id.* ¶ 22-23). Boyd reported the premature patient transports to Wielgus, but it did not result in any reprimand for Revoir-Payne. (*Id.* at ¶¶ 24-25). Boyd also told Wielgus about the harassing and racist comments made by Revoir-Payne, but Wielgus told her "it's the norm around here." (*Id.* at ¶ 26). Boyd expressed concern that these statements and actions created an abusive and hostile workplace for Boyd. (*Id.* at ¶ 28).

In April 2019, Boyd requested leave under the Family Medical Leave Act ("FMLA"). (*Id.* at ¶ 31). Boyd was pre-approved for 12 days of FMLA leave per month, provided she gave at least 12 hours' notice to Wielgus of her expected leave. (*Id.* at ¶ 32). At the same time, a White sonographer was not required to give advance notice of his leave. (*Id.* at ¶ 33). After her FMLA leave was approved, Wielgus began refusing workplace accommodations. (*Id.* at ¶ 34). For example, Boyd requested advance notice when she would be temporarily transferred to Defendant's facility in Shiloh, Illinois. (*Id.* at ¶ 35). While other White employees were given this advance notice, Boyd was not. (*Id.* at ¶¶ 36-37).

Wielgus continued scheduling patient transports for Boyd every 30 minutes, violating the 45-minute scan time required by ARDMS. (*Id.* at ¶ 43). Boyd requested permission to schedule her own patient transports, but her request was denied. (*Id.* at ¶¶ 39-40). Other White employees were permitted to schedule their own patient transports, and Wielgus did not schedule patient scans for White sonographers at the same rate that she did for Boyd. (*Id.* at ¶¶ 41, 43). Boyd complained to Rosalee Wilson in Human Resources about the harassment and discrimination, but Wilson neither documented the report nor investigated the claim. (*Id.* at ¶ 44).

On May 12, 2020, Wielgus placed Boyd on a three-month furlough without pay and selected an untrained White sonographer to replace her. (*Id.* at ¶¶ 52-53). When Boyd returned from the furlough, Wielgus tried to coerce her into transferring or quitting. (*Id.* at ¶ 54). Around this time, Boyd also learned a White employee was allowed FMLA leave beyond the 12-month limit and retirement with full benefits. (*Id.* at ¶¶ 56-57).

In early 2021, Boyd was in a meeting with Wielgus when an order came in for Boyd to perform a timed procedure. (*Id.* at ¶ 57). A White staff nurse left the procedure order on the printer for 20 minutes until Boyd returned from the meeting. (*Id.*). A "conflict" ensued, and the staff nurse accused Boyd of subordination. (*Id.* at ¶ 58). The nurse gave a report of the conflict to Wielgus, who then issued a written reprimand to Boyd for refusing to conduct the procedure for 20 minutes. (*Id.* at ¶¶ 58-59). Following this reprimand, Boyd again complained to Wilson in HR about the harassment, retaliation, and workplace discrimination. (*Id.* at ¶ 60). Boyd tried to give Wilson a written complaint, but Wilson would not accept it. (*Id.* at ¶ 62).

In May 2021, Wielgus transferred Boyd to another department without proper training or time for her to become familiar with the new procedures and protocols, despite providing training for White employees. (*Id.* at ¶¶ 65-66). Boyd also overheard Wielgus telling White employees to report Boyd as an ineffective employee. (*Id.* at ¶ 67).

On July 12, 2021, Boyd sustained repetitive motion injuries to her cervical and thoracic spine as well as her right shoulder while conducting a patient scan. (*Id.* at ¶ 70). The injury consisted of a sharp, severe burning and tingling pain extending from her neck down to her right hand fingertips. (*Id.* at ¶ 71). Boyd ceased the scan and immediately called Wielgus to report her injury. (*Id.* at ¶ 72). Wielgus instructed Boyd to see Occupational Health Nurse Stacy Geiger. (*Id.* at ¶ 73). Geiger sent Boyd to the emergency room. (*Id.* at ¶ 75).

A CAT scan of Boyd's cervical spine showed several bulging discs. (*Id.* at ¶ 77). She was given pain medication and discharged four hours later with instructions to

follow up with the company's Occupational Health doctor. During that follow-up appointment with Dr. P. Ellinas, a nurse abruptly entered the room and started questioning the severity and nature of Boyd's injuries. (*Id.* at ¶ 79). The nurse informed Boyd that Wielgus had instructed her to be present during the examination. (*Id.* at ¶ 80).

Dr. Ellinas referred Boyd to an orthopedic spine physician. (*Id.* at ¶ 82). Dr. Patricia Hurford, a workers' compensation assistant, began treatment of Boyd's cervical and thoracic spinal injuries, but she refused to examine Boyd's right shoulder, telling Boyd to see a primary care physician. (*Id.* at ¶ 84). A later MRI through another doctor showed a right rotator cuff tear. (*Id.* at ¶ 88). This doctor told Boyd to request that Dr. Hurford refer her to a specialist. (*Id.* at ¶ 89). Dr. Hurford ignored Boyd's complaints about her numbness, tingling, and right shoulder pain and did not refer Boyd to a specialist. (*Id.* at ¶¶ 90-96). On September 13, 2022, Boyd again requested a workers' compensation referral from Dr. Hurford for her shoulder injury. (*Id.* at ¶ 96). Dr. Hurford's office informed Boyd that treatment for her shoulder injury would not be approved by workers' compensation. (*Id.* at ¶ 97).

Dr. Hurford terminated treatment of Boyd on September 28, 2022, and determined she had reached maximum medical improvement. (*Id.* at ¶ 101). That same day, Wielgus notified Boyd of a return to work date of October 3, 2022. (*Id.* at ¶ 104). Boyd requested workplace accommodations due to her untreated shoulder injury and persistent numbness and tingling in her right hand, but the request was denied. (*Id.* at ¶¶ 107-08). Boyd applied for short-term disability benefits on September 30, 2022. (*Id.* at ¶ 111). On October 10, 2022, Wilson in HR directed Boyd to file a separate workers' compensation

claim for her shoulder injury. (*Id.* at ¶ 116). She also told Boyd that no further FMLA leave was available. (*Id.* at ¶ 117).

Boyd's primary care doctor referred her to a neurologist and orthopedic specialist to address her right shoulder injury and spinal injuries. (*Id.* at ¶ 128). Boyd contacted Wilson to see if any remote work was available; Wilson's response was "No!" (*Id.* at ¶ 129). There were, however, numerous positions on Defendant's website for which she qualified. (*Id.* at ¶ 131). Boyd also discovered her current position was listed on the job site *Indeed*. (*Id.*).

On November 30, 2022, Boyd emailed Wilson and asked for a status update on accommodations, reinstatement, and approval for referrals to a neurologist and shoulder specialist. (*Id.* at ¶ 132). Wilson told Boyd she would forward the matter to occupational health and "the workcomp people." (*Id.* at ¶ 133). On December 1, 2022, Boyd emailed Wilson and said that any further communications regarding Defendant's refusal to make workplace accommodations should go through her attorney. (*Id.* at ¶ 134). The next day, Boyd received a letter of termination. (*Id.* at ¶ 135).

On August 1, 2023, Boyd filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). (Doc. 16). In the Charge, Boyd alleged discrimination based on retaliation and disability beginning December 1, 2022. (*Id.*). Specifically, the Charge states:

> I was hired with the above reference[d] respondent in August 2018. In or about July 2021, I was injured on the job and seen by BJC's company doctor for my workers compensation injury case. The company denied

>treatment/refused to refer out for all injuries that occurred thereby extending pain and financial burden and ultimately an illegal ending of my workers compensation benefits which forced me to file for short-term disability benefits. In October 2022, BJC Workers Compensation ended my benefits. Respondent terminated my employment on December 1, 2022. I believe I was denied benefits, terminated and retaliated against because I filed a workers compensation claim.

(Doc. 16 at p. 6).

On September 20, 2023, Plaintiff received her Notice of Right-to-Sue. (Doc. 16). Boyd initiated this action, pro se, on December 18, 2023. (Doc. 1). She amended her complaint on January 26, 2024, to allege the following claims:

**Count I:**   Section 1981 – Discrimination and Retaliation on the Basis of Race

**Count II**:   Title VII and Section 1981 – Discrimination and Retaliation on the Basis of Race, Harassment, Hostile Work Environment

**Count III**:   IHRA, Title VII and Title 42 – Discrimination and Retaliation on the Basis of Race and ADA Accommodations

(Doc. 13).

Memorial Hospital filed a motion to dismiss the Amended Complaint on July 18, 2024 (Doc. 33), arguing that Boyd has failed to exhaust her administrative remedies as to her Title VII, IHRA, and Americans with Disabilities Act ("ADA") claims. Memorial Hospital also asserts that the Complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and, alternatively, fails to allege facts sufficient under Rule 12(b)(6) to plead a claim for retaliation under Title VII or the IHRA. (*Id.*).

The next day, Boyd filed a motion to appoint counsel. (Doc. 34). The Court granted the motion and appointed an attorney for Boyd. (Doc. 36). On November 15, 2024, assigned counsel filed a motion to withdraw, stating that after a lengthy meeting

discussing her case, Boyd indicated her desire to proceed pro se while continuing to speak with private attorneys. (Doc. 41). The Court granted the motion to withdraw and gave Boyd additional time to respond to the motion to dismiss. (Doc. 44). Boyd filed her response in opposition on January 2, 2025. (Doc. 46). Memorial Hospital filed a reply brief two weeks later. (Doc. 48).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Memorial Hospital first asserts Boyd's claims under Title VII, the IHRA, and the ADA must be dismissed because she failed to exhaust her administrative remedies before filing this lawsuit. Specifically, it argues that the claims in the Amended Complaint encompass allegations outside of those in Boyd's Charge of Discrimination filed with the EEOC. While the Amended Complaint raises racial discrimination, harassment on the basis of race, retaliation on the basis of race, hostile work environment, and disability discrimination, the Charge alleges that Boyd was denied benefits, terminated, and retaliated against because she filed a workers' compensation claim. Furthermore, the Charge states that the alleged discrimination began on December 1, 2022. Memorial Hospital contends that Boyd cannot now extend that timeline back to 2018 as alleged in the Amended Complaint.

In response, Boyd argues that her claims need not mirror the EEOC Charge verbatim, nor must the EEOC Charge describe every specific claim. Instead, her claims must be "like or reasonably related to" the allegations in Charge. And here, her allegations of retaliation and termination arising from her workers' compensation claim

provide a factual basis for the EEOC to investigate her discrimination and hostile work environment claims. Boyd also argues that the continuing violation doctrine allows consideration of actions that occurred before December 1, 2022.

In reply, Memorial Hospital avers that the factual narrative of Boyd's Charge is devoid of any reference to racial discrimination or a hostile work environment and, thus, the claims in the Amended Complaint are not like or reasonably related to the allegations in the Charge.

Before a plaintiff may file a Title VII, ADA, or IHRA claim, she must first exhaust her administrative remedies by filing a Charge of Discrimination and receiving a Right to Sue letter.[2] *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) ("An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer."). "After doing so, a plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quotation omitted); *see also Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019) ("In general, a plaintiff can only bring claims under Title VII or the IHRA that he has included in the original charge filed with the [EEOC] or the IDHR."). This requirement allows the agency and the employer to settle the matter and ensures the employer has adequate notice of the alleged conduct. *Id.* (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)).

---

[2] The EEOC and the IDHR "have a work sharing arrangement providing that a charge filed with one is deemed cross-filed with the other." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019) (quoting *McQueen v. City of Chi.*, 803 F.Supp.2d 892, 902–03 (N.D. Ill. 2011)).

Claims are "like or reasonably related" when (1) "there is a reasonable relationship between the allegations in the charge and the claims in the complaint," and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). The charge and complaint must at least describe the same conduct and implicate the same people. *Id.* "A plaintiff cannot bring a new claim that is 'inconsistent with' the claim in his EEOC charge, even if the new claim 'involves the same parties and the same facts as the other claim.'" *Id.* at 1004-05 (quoting *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 526 (7th Cir. 2008)). There must be a factual relationship between the discrimination alleged in the charge and in the complaint. *Id.* at 1005.

In Count II, Boyd brings a claim under Title VII for discrimination and retaliation on the basis of race, harassment, and hostile work environment. She states that, as an African American, she is a member of a protected class, she was performing her job in a manner that was consistent with Defendant's legitimate business expectations, and Defendant discriminated against her by harassing her, subjecting her to a hostile work environment, retaliating against her, and firing her. (Doc. 13 at p. 23). In Count III, she raises a claim under the IHRA, Title VII, and the ADA for discrimination and retaliation on the basis of race and her request for ADA accommodations, alleging that Defendant discriminated against her, retaliated against her, and failed to make medical accommodations for her. (*Id.* at p. 24).

In her Charge, however, Boyd only references her injury that occurred in July 2021, Defendant's denial of care for her injuries, the termination of her workers' compensation

benefits, and that she was "denied benefits, terminated and retaliated against because I filed a workers' compensation claim." (Doc. 16 at p. 6). There is no mention of discrimination, harassment, a hostile work environment, or retaliation on the basis of race or her request for ADA accommodations. Nor is there a reasonable relationship between the allegations in the Charge and the claims in Boyd's Amended Complaint. Instead, the sole focus of the Charge is Boyd's belief that she was denied benefits and fired because she filed a workers' compensation claim. This is insufficient to exhaust Boyd's administrative remedies.

Because Boyd did not exhaust her claims under Title VII, the IHRA, or the ADA, those claims in Counts II and III will be dismissed.[3] But, because the filing of a Charge of Discrimination is not required to bring claims under 42 U.S.C. § 1981, Boyd's claims in Counts II and III filed under § 1981 survive. *See Tyson v. Gannett Co.*, 538 F.3d 781, 783 (7th Cir. 2008) (dismissing Title VII race discrimination claim where plaintiff failed to file charge of discrimination on basis of race, but allowing § 1981 claim to stand).

## II. General Pleading Deficiencies

Memorial Hospital next argues that Boyd's Amended Complaint should be dismissed because it fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Under Rule 8(a), a complaint must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a). In other words, the

---

[3] Memorial Hospital alternatively argues that Boyd has failed to allege facts sufficient to state a claim for retaliation in violation of Title VII or the IHRA. Because these claims are dismissed for failure to exhaust administrative remedies, the Court need not analyze them under Rule 12(b)(6).

complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 421 (7th Cir. 2013). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

Memorial Hospital asserts that Boyd has failed to comply with Rule 8 because her Amended Complaint is neither direct nor concise, and it is vague as to the causes of action she is alleging. It also claims she has failed to set forth factual support or a basis for any claim. Defendant cherry picks a handful of allegations that it asserts are legal conclusions, and contends that Boyd has failed to give sufficient detail to put it on notice of the alleged claims against it.

The Court disagrees. Boyd's Amended Complaint contains a plethora of detailed factual allegations, each in numbered paragraphs, and is quite well written for a pro se litigant. While the Court acknowledges that some of her allegations contain legal conclusions, so do many of the complaints filed by licensed attorneys in this district. Moreover, the Amended Complaint very plainly sets out the three claims Boyd is raising, and the factual allegations support those claims.

The Court is also unpersuaded by Memorial Hospital's attempt to characterize the Amended Complaint as so incoherent that it violates Rule 10 and must be dismissed. Memorial Hospital claims that the Amended Complaint "lacks any organization or

factual declarations for which Defendant can successfully comprehend the facts that Plaintiff states amount to an alleged wrongful act" and that "Plaintiff's list of thoughts or statements range so extensively that it is impossible to ascertain each claim." Defendant's argument is so off the mark that the Court finds it disingenuous. Rule 10 simply provides that a party must state its claim "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). That is what Boyd did. Defendant's motion is denied on this basis.

## CONCLUSION

For these reasons, the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Protestant Memorial Medical Center, Inc. d/b/a Memorial Hospital Belleville (Doc. 33) is **GRANTED in part and DENIED in part.**

Plaintiff Candrice Boyd's claims under Title VII in Count II and her claims under the IHRA, Title VII, and the ADA in Count III are **DISMISSED without prejudice**.

This case shall now proceed on Boyd's claims under Section 1981 in Counts I and II. A scheduling conference shall be set by separate order.

**IT IS SO ORDERED.**

DATED: March 6, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**